# In the United States Court of Appeals for the Fifth Circuit

---

TIMOTHY JACKSON,

*Plaintiff-Appellee,*

v.

LAURA WRIGHT; MILTON B. LEE; MELISA DENIS; MARY DENNY; DANIEL FEEHAN; ET AL.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
Case No. 4:21-cv-00033-ALM

---

## BRIEF OF APPELLEE TIMOTHY JACKSON

---

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff-Appellee*

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Defendants | Defendants' Counsel |
|---|---|
| • Laura Wright<br>• Milton B. Lee<br>• Melisa Denis<br>• Mary Denny<br>• Daniel Feehan<br>• A.K. Mago<br>• Carlos Munguia<br>• G. Brint Ryan<br>• Rachel Gain<br>• Ellen Bakulina<br>• Andrew Chung<br>• Diego Cubero<br>• Steven Friedson<br>• Rebecca Dowd Geoffroy-Schwinden<br>• Benjamin Graf<br>• Frank Heidlberger<br>• Bernardo Illari<br>• Justin Lavacek<br>• Peter Mondelli<br>• Margaret Notley<br>• April L. Prince<br>• Cathy Ragland<br>• Gillian Robertson<br>• Hendrik Schulze<br>• Vivek Virani<br>• Brian F. Wright | Judd E. Stone II<br>Lanora C. Pettit<br>Beth Klusmann<br>Courtney Corbello<br>TEXAS ATTORNEY GENERAL'S OFFICE |

| Plaintiff | Plaintiff's Counsel |
|---|---|
| • Timothy Jackson | Jonathan F. Mitchell<br>MITCHELL LAW PLLC<br><br>Michael Allen<br>Samantha Harris<br>ALLEN HARRIS PLLC |

<u>/s/ Jonathan F. Mitchell</u>
JONATHAN F. MITCHELL
*Counsel for Plaintiff-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-appellee Timothy Jackson does not believe oral argument is necessary, as the district court's thorough and well-reasoned opinion correctly held that Professor Jackson alleged the elements of Article III standing and alleged a cause of action under *Ex parte Young*, 209 U.S. 123, 155–56 (1908). If the Court decides to hold oral argument, however, the appellee respectfully requests the opportunity to participate.

# TABLE OF CONTENTS

Certificate of interested persons ............................................................. i

Statement regarding oral argument ........................................................ iii

Table of contents ................................................................................. iv

Table of authorities ............................................................................. vi

Statement of jurisdiction ....................................................................... 1

Statement of the issues ......................................................................... 1

Statement of the case ............................................................................ 2

Summary of argument ........................................................................... 7

Atandard of review ............................................................................... 8

rgument ............................................................................................... 9

I.   Jackson's First Amendment claim against the Board defendants
     falls squarely within the *Ex Parte Young* exception to sovereign
     immunity ................................................................................. 9

     A.   The Board defendants have "some connection" with the
          ongoing violation of Professor Jackson's First
          Amendment rights ............................................................ 10

     B.   Professor Jackson is seeking permissible relief under *Ex
          parte Young* .................................................................... 17

II.  Professor Jackson has indisputably alleged Article III standing ......... 21

     A.   Professor Jackson has alleged injury in fact that gives him
          standing to sue the Board defendants ................................... 21

     B.   Professor Jackson has alleged that these injuries are
          "fairly traceable" to the board defendants ............................ 23

     C.   Professor Jackson's ongoing and future injuries are
          redressable ....................................................................... 25

III. The district court has supplemental jurisdiction over Professor
     Jackson's state-law defamation claims .......................................... 25

Conclusion ......................................................................................... 26

Certificate of service ........................................................................... 27

Certificate of compliance ..................................................................... 28

Certificate of electronic compliance ....................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Board of Regents, University of Wisconsin System v. Southworth*,
   529 US 217 (2000) ............................................................ 13

*Brown v. Plata*, 563 U.S. 493 (2011) ....................................... 19

*Christopher v. Harbury*, 536 U.S. 403 (2002) ...................... 1, 7

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ................ 8

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) ............... 16

*Ex parte Young*, 209 U.S. 123 (1908) ............................... passim

*Fisher v. University of Texas*, 758 F.3d 633 (5th Cir. 2014) ..................... 25

*Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004) ................... 19

*Gomez v. Toledo*, 446 U.S. 635 (1980) ................................. 12

*Larson v. Valente,* 456 U.S. 228  (1982) ............................... 25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .................................................... 24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........... 1, 7, 21

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) ......... 1, 2, 7, 23

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .................. 16

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*,
   506 U.S. 139 (1993) ...................................................... 6

*Raj v. Louisiana State University*, 714 F.3d 322 (5th Cir. 2013) ................ 9

*Regents of the University of California v. Bakke*, 438 U.S. 265 (1978) ............ 13

*Richardson v. Texas Secretary of State*, 978 F.3d 220 (5th Cir. 2020) ............ 20

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008) ............... 8

*Rosenberger v. Rector and Visitors of the University of Virginia*,
   515 U.S. 819 (1995) .................................................. 12, 13

*Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) ................... 21, 22

*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ............ 6, 11, 15

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ..................................................22

*Union Pacific Railroad Co. v. Louisiana Public Service Comm'n*,
    662 F.3d 336 (5th Cir. 2011) ...........................................................12

*Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*,
    535 U.S. 635 (2002) ..........................................................5, 8, 9, 20

*Virginia Office for Protection and Advocacy v. Stewart*,
    563 U.S. 247 (2011) ........................................................................19

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ...................10, 15

A plaintiff needs only to allege and not prove the elements of Article III standing at the motion-to-dismiss stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (Article III's standing requirements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."). In like manner, a plaintiff needs only to allege that a claim fits within the doctrine of *Ex parte Young*, 209 U.S. 123, 168 (1908), to survive a motion to dismiss on sovereign-immunity grounds. Professor Jackson's allegations—which must be accepted as true,[1] and which must be construed in the light most favorable to Professor Jackson at this stage of the litigation[2]—are easily sufficient to survive the defendants' motion to dismiss.

## STATEMENT OF JURISDICTION

The jurisdictional statement in the appellants' brief is complete and correct.

## STATEMENT OF THE ISSUES

1. Whether Professor Jackson has alleged a cause of action to sue the members of the UNT Board of Regents under the *Ex parte Young* exception to sovereign immunity.

---

1. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true.").
2. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002) ("Since we are reviewing a ruling on motion to dismiss, we accept Harbury's factual allegations and take them in the light most favorable to her.").

2.    Whether Jackson has alleged Article III standing to sue the Board de-

fendants for violating his First Amendment Rights.

3.    Whether the district court can assert supplemental jurisdiction over

Jackson's state-law defamation claims.

## STATEMENT OF THE CASE[3]

Plaintiff Timothy Jackson is a professor at the University of North Texas

and a scholar of the music theorist Heinrich Schenker. ROA.17. After a fellow

music scholar named Philip Ewell published a paper and delivered a promi-

nent talk that denounced Schenker as "an ardent racist,"[4] Professor Jackson

organized a symposium and invited music scholars to submit papers respond-

ing to Ewell's thesis. ROA.17; ROA.22-26. Many (though not all) of these

symposium papers were highly critical of Ewell's attacks on Schenker.

ROA.17. Professor Jackson also contributed his own piece to the symposium,

which defended Schenker and sharply criticized Ewell for quoting Schenker

out of context and refusing even to mention that Schenker was Jewish and

experienced anti-Semitism in Nazi Germany. ROA.17-18; ROA.24-26. Pro-

fessor Jackson then arranged for these symposium papers to be published in

---

3.    Because the Board defendants have appealed the denial of a motion to
      dismiss, we will recite the facts as alleged in the complaint, which must
      be accepted as true at this stage of the litigation. *See Manhattan Commu-
      nity Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this
      case comes to us on a motion to dismiss, we accept the allegations in the
      complaint as true.").
4.    ROA.21-22.

the Journal of Schenkerian Studies, a journal that Professor Jackson founded almost 20 years ago and operates at the University of North Texas. ROA.18.

Professor Jackson's defense of Schenker and criticisms of Ewell—as well as his role in publishing a symposium that was largely (though not entirely) critical of Ewell's denunciations of Schenker—incited an academic mob. ROA.18; ROA.26-30. Allies of Ewell have been demanding that the University of North Texas fire Professor Jackson and shut down his Journal for Schenkerian Studies, as well as the Center for Schenkerian Studies that Professor Jackson runs at the university. ROA.18. Numerous individuals defamed Professor Jackson by publishing statements calling him "racist"— merely because he organized a symposium to defend a music theorist accused of being a racist and because he criticized a colleague, Philip Ewell, who happens to be black. ROA.18; ROA.27-29.

Rather than defend Professor Jackson's academic freedom, the University of North Texas and its administrators joined the witch hunt. ROA.18; ROA.29-30. They launched an investigation into Professor Jackson, and commissioned an "ad hoc review panel" to determine "whether the standards of best scholarly practice were followed" in publishing the symposium. ROA.18. The panel issued its report in November 2020, published on the University of North Texas website, which makes baseless criticisms of the "editorial and review practices" of the Journal of Schenkerian Studies. ROA.18; ROA.29-30. Professor Jackson's department chair, Dr. Benjamin Brand, is now using this report as an excuse to exclude Professor Jackson

from any continued involvement with the journal. ROA.18; ROA.30. Dr. Brand not only informed Professor Jackson that he would be removed from the Journal, but also that the university would eliminate resources previously provided to the Journal and Center for Schenkerian Studies. ROA.30; see also id. ("I cannot support a plan according to which you would remain involved in the day-to-day operations of the journal, and its editorial process in particular, given the panel's findings of editorial mismanagement at JSS.").

All of this—the investigation, the criticisms of Professor Jackson in the ad hoc panel's report, and the threats to remove Professor Jackson from the Journal for Schenkerian Studies—was done to retaliate against Professor Jackson for exercising his constitutional rights under the Speech Clause. ROA.18-19. In response, Professor Jackson is suing two groups of defendants. First, he has brought First Amendment claims against the members of the UNT Board of Regents in their official capacities, which seek to undo these unconstitutional actions and enjoin the university from engaging in any further retaliatory actions against him. ROA.19. Second, Professor Jackson has brought state-law defamation claims against the individuals who published and propagated baseless statements that he is "racist." ROA.19.

The defendants moved to dismiss Professor Jackson's complaint, claiming that Professor Jackson failed to allege Article III standing to bring his First Amendment claims against the Board defendants. ROA.427-429. The defendants also argued that Professor Jackson's claims against the Board defendants were barred by sovereign immunity, ROA.429-432, and that the dis-

trict court could not assert supplemental jurisdiction over the state-law defamation claims given the alleged absence of jurisdiction over the First Amendment claims, ROA.434-346. The defendants also moved to dismiss Professor Jackson's First Amendment and defamation claims for failing to state a claim on which relief may be granted. ROA.432-434; ROA.436-440.

The district court held a hearing to resolve factual issues relevant to the plaintiff's motion for a jurisdictional dismissal. ROA.885. At the hearing, Professor Jackson testified that he currently has no involvement with the Journal that he founded and has suffered severe damage to his reputation. ROA.885. Professor Jackson also testified that the thirteenth volume of the Journal is frozen in the editing stages because of the university's actions against him. ROA.885. The district court found that Professor Jackson had therefore established an ongoing Article III injury from "his continued banishment from the Journal,"[5] which is fairly traceable to the Board defendants and redressable with prospective declaratory or injunctive relief. ROA.896-902.

The district court also held that Professor Jackson's First Amendment claims fell squarely within the *Ex parte Young* exception to sovereign immunity, as he had "alleged an ongoing violation of federal law" and sought "relief properly characterized as prospective." ROA.903-904 (quoting *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

---

5.   ROA.891.

The district court also held that Professor Jackson had shown "some connection" between the Board Defendants and the alleged ongoing violation of his First Amendment rights, noting that "[a] 'scintilla of "enforcement" by the relevant state official with respect to the challenged law' will do." ROA.904 (quoting *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)); *see also Ex parte Young*, 209 U.S. 123, 157 (1908) ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party."). The district court observed that the Board Defendants "serve as part of the governing body for the UNT System," ROA.904, and that UNT officials act on their behalf when taking or threatening action against Professor Jackson. ROA.904-905.

After dispatching the defendants' jurisdictional objections to Professor Jackson's First Amendment claims, the district court went on the reject the defendants' supplemental-jurisdiction objections and their motion to dismiss for failure to state a claim. ROA.905-913.

Because the district court denied a sovereign-immunity defense, the defendants took an interlocutory appeal under the collateral-order doctrine. *See Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) ("States and state entities that claim to be 'arms of the State' may

take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity.").

## SUMMARY OF ARGUMENT

Professor Jackson's burden at the motion-to-dismiss stage is an easy one. He needs only to *allege* and not prove the components of Article III standing,[6] and he needs only to allege and not prove that his First Amendment claims fit within the doctrine of *Ex parte Young*, 209 U.S. 123, 168 (1908). Every allegation in Professor Jackson's complaint must be accepted as true,[7] and every allegation must be construed in the light most favorable to Professor Jackson. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002) ("Since we are reviewing a ruling on motion to dismiss, we accept Harbury's factual allegations and take them in the light most favorable to her."). The defendants cannot prevail on their motion to dismiss, especially given the thumb that must be placed on the plaintiff's side of the scale at this early stage of the litigation.

Professor Jackson's claims against the Board defendants fit comfortably within the *Ex parte Young* doctrine because Professor Jackson is seeking prospective relief to enjoin an ongoing violation of his First Amendment rights. *See* ROA.32; *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535

---

6. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

7. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true.").

U.S. 635, 645 (2002). The Board defendants have "some connection" to the ongoing violation of his rights because it is undisputed that the Board of Regents has the power and authority to protect the First Amendment freedoms of university faculty. *See* Appellants' Br. at 5; *see also* https://www.untsystem.edu/board-regents ("The Board of Regents [is] the governing body for the University of North Texas System"). The defendants' attempts to deny the existence of a "connection" under *Ex parte Young* are meritless—and they cannot be accepted when all facts must be viewed in the light most favorable to Professor Jackson.

Professor Jackson has also alleged each of the three components of Article III standing with respect to his First Amendment claims: (1) An injury in fact, which is (2) Fairly traceable to the named defendants; and (3) Likely to be redressed by the requested relief. Professor Jackson has alleged an ongoing injury from his continued exclusion from the Journal, and it is undisputed that the Board defendants can stop these ongoing violations of his First Amendment rights and will do so if the Court grants the requested relief.

## STANDARD OF REVIEW

The district court's standing and sovereign-immunity determinations are reviewed de novo. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) ("[W]e review all justiciability issues, including standing and ripeness, de novo."); *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) ("We review the district court's jurisdictional determination of sovereign immunity de novo."). The district court's factual determinations are re-

viewed under the clearly-erroneous standard, *see* Fed. R. Civ. P. 52(a)(6), but the appellants do not claim to be contesting the district court's assessment of the facts.

## ARGUMENT

### I. JACKSON'S FIRST AMENDMENT CLAIM AGAINST THE BOARD DEFENDANTS FALLS SQUARELY WITHIN THE EX PARTE YOUNG EXCEPTION TO SOVEREIGN IMMUNITY

The defendants' sovereign-immunity objections are meritless because Professor Jackson is seeking prospective relief to enjoin an ongoing violation of his First Amendment rights. *See* ROA.32 (asking the Court to "enjoin the members of the Board of Regents, along with their employees and subordinates, from taking any adverse action against Professor Jackson in response to the publication of the symposium or his criticisms of Professor Ewell"). That falls squarely within the *Ex parte Young* exception to sovereign immunity. *See Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straight-forward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (citation omitted)); *Raj v. Louisiana State University*, 714 F.3d 322, 328 (5th Cir. 2013) ("[T]he Eleventh Amendment does not bar suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.").

The Board defendants try to escape *Ex parte Young* by denying that they have any "connection" to the alleged violation of Professor Jackson's First

Amendment rights. See Appellants' Br. at 22–31. They also claim that Professor Jackson has failed to request "prospective" relief authorized by *Ex parte Young*. *See id.* at 32–36. Neither argument has merit.

**A.    The Board Defendants Have "Some Connection" With The Ongoing Violation Of Professor Jackson's First Amendment Rights**

The *Ex parte Young* doctrine requires that a defendant have "some connection" with the alleged violation of federal law; otherwise the lawsuit will be regarded as a suit against a sovereign state rather than an individual who has forfeited his sovereign status:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have *some connection with* the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party. It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. In some cases, it is true, the duty of enforcement has been so imposed (154 U.S. 362, 366, § 19 of the act), but that may possibly make the duty more clear; if it otherwise exist it is equally efficacious. The fact that the state officer, by virtue of his office, has *some connection with* the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.

*Ex parte Young*, 209 U.S. 123, 157 (1908) (emphasis added); *see also Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021) ("While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws, the petitioners do not direct this Court to any enforcement au-

thority the attorney general possesses in connection with S. B. 8 that a federal court might enjoin him from exercising."). But the "some connection" test imposes only a minimal burden on the plaintiff; as the district court correctly observed, a mere "scintilla of 'enforcement' by the relevant state official"[8] is all that is needed to meet this requirement. ROA.904. The defendants do not deny that the Board defendants satisfy the "scintilla of enforcement" standard; indeed, they do not even acknowledge it in their brief.

In addition, Professor Jackson is *not* challenging the constitutionality of the statute; he is challenging the *conduct* of the university and its officials. The cases that explore whether a state official has "some connection with" the enforcement of an allegedly unconstitutional statute have no bearing on the situation here, where Professor Jackson is suing to stop an academic witch hunt conducted by the university and its personnel. The defendants acknowledge that the Board defendants have the power and authority to protect the First Amendment freedoms of university faculty[9]—and they have a constitutional obligation to protect academic freedom as stewards of a public

---

8. *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (citation omitted)).

9. *See* Appellants' Br. at 5 (acknowledging that the Board "has set certain rules regarding faculty employment," but that it has "delegated to delegated to each constituent institution the obligation to 'publish policies and procedures specifically related to faculty hiring, promotion, tenure, evaluation, leave, compensation, governance, discipline, a faculty grievance process, and such other policies and procedures required by these Regents Rules.'").

university. *See, e.g.*, *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995). The Board defendants undisputed power over the university system gives them "some connection" to the alleged constitutional violations that they have failed to counteract or stop.

The defendants complain that Professor Jackson has "not alleged facts demonstrating a connection between the Board defendants and any alleged First Amendment retaliation." Appellants' Br. at 23. But Professor Jackson is not required to make any "allegations" of that sort. State sovereign immunity is an affirmative defense,[10] and complaints are not required to anticipate or plead around affirmative defenses. *See Gomez v. Toledo*, 446 U.S. 635, 641 (1980). It is the defendants' burden to plead sovereign immunity in its answer or in a Rule 12(b)(1) motion, and they cannot seek dismissal on the ground that the plaintiff's complaint fails to allege facts that would surmount a waivable affirmative defense. In all events, the Board of Regents, as the governing authority of the university, will by definition have "some connection" to the retaliatory actions that Professor Jackson has alleged, because the Board of Regents has the authority to oversee and countermand the decisions of university officials. The situation is no different from a lawsuit challenging a public university's affirmative-action programs, its refusal to fund a student-run Christian newspaper, or its imposition of a campus-wide student-activity fee. *See Regents of the University of California v. Bakke*, 438 U.S.

---

10. *See Union Pacific Railroad Co. v. Louisiana Public Service Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011).

265, 303 (1978); *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819 (1995); *Board of Regents, University of Wisconsin System v. South-worth*, 529 US 217 (2000). In all of these cases, suit was properly brought against the individual regents even though the challenged policies were made and implemented by lower-level university officials.

The defendants do not cite a single case in which the members of a public university's board of regents were held to be improper defendants in an *Ex parte Young* lawsuit seeking relief against the unconstitutional conduct of university officials or employees—and we have not been able to find any such case. Indeed, it would be impossible for Professor Jackson to obtain effective relief unless the university's overseers were sued, because an injunction that extends only to a lower-level university official (such as his department chair, the dean of the college of music, the provost, or the individual members of the ad hoc committee) would allow the university to continue the constitutional violations by putting different faculty members or administrators in charge of the witch hunt. The defendants imply throughout their brief that Professor Jackson should have sued only the university personnel that were directly involved in the persecution,[11] but they never explain how an injunction that extends only to those individuals would have protected Professor Jackson from retaliation by other university employees. Only an injunction directed at the Board defendants will provide the university-wide relief that

---

11.   *See* Appellants' Br. at 23–24.

Professor Jackson needs to resume his work on the Journal and continue his career without facing retaliation for his criticisms of Professor Ewell.

Nor do the defendants have any theory for how the plaintiffs in *Bakke*, *Rosenberger*, and *Southwick* (among other cases) were able to sue the regents of their university under *Ex parte Young* without running headlong into a sovereign-immunity obstacle. The defendants note that no one appeared to raise a sovereign-immunity objection in *Bakke* or *Fisher*,[12] and that may have been true in *Rosenberger* and *Southwick* as true. But the implication is that the very distinguished lawyers representing the university defendants in those cases committed legal malpractice by acquiescing to the *Ex parte Young* claims brough against the individual regents—a conclusion that is hard to accept given what appears to be the complete absence of any case holding that the members of a public university's board of regents lack "some connection" to the constitutional violations committed by university officials. The defendants also assert that *Ex parte Young* claims may be brought only against individuals who actually "enforce" a challenged policy,[13] but that stance is simply incompatible with the cases that require only that a defendant have "some connection with" the enforcement of a disputed statute.[14] The defendants try to distinguish *Fisher* on the ground that the University of Texas Board of Regents affirmatively adopted a resolution allowing its schools to consider race

---

12.  *See* Appellants' Br. at 25–26.
13.  *See* Appellants' Br. at 26.
14.  *See supra*, at pp. 10–11.

in admissions,[15] but that does nothing to explain why the individual regents were proper defendants in *Bakke*, *Rosenberger*, or *Southwick*. And in all events, the regents in *Fisher* merely approved the affirmative-action policy and did not "enforce" it; on the defendants' view, only the university officials who *enforce* (rather than authorize or approve) a challenged policy can be sued under *Ex parte Young*. *See* Appellants' Br. at 26 ("This Court has squarely held that Ex parte Young turns on who *enforces* a challenged policy, which 'typically involves compulsion or constraint.'").

The defendants try to analogize the Board defendants to a state attorney general who is sued over his "general duty to enforce the law." *See* Appellants' Br. at 28 (citing *Texas Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020)); *see also Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021) (refusing to allow plaintiffs to sue a state attorney general under *Ex parte Young* when challenging an abortion statute that is enforceable solely through private civil lawsuits). But in those cases the state attorney general had *no* role whatsoever in the alleged constitutional violations—not even a supervisory role over the individuals who were alleged to be violating another's constitutional rights. *See id.* ("[T]he petitioners do not direct this Court to *any* enforcement authority the attorney general possesses in connection with S. B. 8 that a federal court might enjoin him from exercising." (emphasis added)). That is not the situation here. The university as an institution is en-

---

15.   *See* Appellants' Br. at 26–27.

gaged in an ongoing violation of Professor Jackson's First Amendment rights, and the appellants concede that the Board defendants are in charge of the university and its components. *See* Appellants' Br. at 4–5. They are the proper defendants under *Ex parte Young*, in the same way that the state attorney general can be sued in response to constitutional violations committed by employees of the state attorney general's office.

The defendants claim that *respondeat superior* can never be invoked in the *Ex parte Young* context,[16] but they cite no cases to support that view apart from *Monell v. Department of Social Services*, 436 U.S. 658 (1978). But *Monell* holds only that *respondeat superior* cannot be invoked to hold a municipality liable for money damages in a 42 U.S.C. § 1983 lawsuit; it has nothing to do with the scope of the *Ex parte Young* exception to sovereign immunity. In most *Ex parte Young* lawsuits a named defendant has supervisory authority over the officer or employee who directly enforces the disputed law,[17] and no court (to our knowledge) has ever suggested that is a problem under the "some connection" test.

---

16. *See* Appellants' Br. at 30–31.
17. *See, e.g.*, *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) (lawsuit brought against Thomas Dobbs, the State Health Officer of the Mississippi Department of Health, even though his subordinates would be the one directly enforcing the disputed statute).

### B. Professor Jackson Is Seeking Permissible Relief Under *Ex Parte Young*

The defendants also claim that Professor Jackson is seeking "impermissible" relief,[18] but that is demonstrably wrong. Professor Jackson's complaint asks the Court to:

> enjoin the members of the Board of Regents, along with their employees and subordinates, from taking any adverse action against Professor Jackson in response to the publication of the symposium or his criticisms of Professor Ewell.

ROA.32. How is that *not* permissible relief under *Ex parte Young*? It seeks a remedy that is purely prospective (an injunction), that restrains the named defendants from taking *future* actions that would (in Professor Jackson's view) violate his constitutional rights. The defendants do not even acknowledge this requested relief, let alone attempt to explain how this request is problematic under any conceivable theory of *Ex parte Young*.

The defendants say that this requested relief is "impermissibly retroactive." Appellants' Br. at 32. But they do not tie this accusation to anything that appears in Professor Jackson's demand for relief. ROA.32. Their claim that Professor Jackson is seeking declaratory relief with respect to past conduct is simply false. *See* Appellants' Br. at 33 ("The *Ex parte Young* doctrine . . . 'does not permit judgments against state officers declaring that they violated federal law in the past.'"). Professor Jackson's demand for declaratory relief is carefully crafted to avoid any such request:

---

18.  See Appellants' Br. at 32–36.

Professor Jackson respectfully requests that the court:

> i. declare that the university and its administrators *are violating* Professor Jackson's rights under the First and Fourteenth Amendments by retaliating against him for his criticism of Philip Ewell;

ROA.32 (emphasis added). Note that the requested declaratory relief is phrased in the present tense; he is seeking a declaration of the legality of the university's *current* actions, not its past behavior. The same is true for the requested injunctive relief, which was quoted earlier. *See supra* at p. 17. Professor Jackson is seeking to prevent the university from *implementing* its decision to exclude him from the Journal, which seeks relief against present-day and future conduct. That is subsumed in Professor Jackson's request to enjoin the Board defendants (and their employees and subordinates) from "taking any adverse action against Professor Jackson in response to the publication of the symposium or his criticisms of Professor Ewell." ROA.32. And it is entirely proper for Professor Jackson to seek a prohibition against all "adverse actions" taken in response to his criticisms of Philip Ewell; otherwise the university and its officials could evade an injunction from this Court by retaliating against Professor Jackson in other ways. Professor Jackson, by contrast, has alleged that the university is *currently* excluding him from the Journal on account of his past criticisms of Philip Ewell, and that is all that is needed to show that he is requesting prospective rather than "retroactive" relief.

Professor Jackson's banishment from the Journal of Schenkerian Studies is an ongoing injury that will continue absent relief from the courts.

ROA.903-904. The initial *decision* to exclude Professor Jackson from the Journal was made in the past, but the *implementation* of that decision will continue indefinitely into the future unless the university changes its stance. That is all that Professor Jackson needs to allege an "ongoing" violation of federal law and to request prospective relief against that ongoing violation.

The defendants are also wrong to accuse Professor Jackson of seeking an "affirmative injunction." Appellants' Br. at 33. Professor Jackson is merely asking for an injunction that will *prevent* the university from taking "adverse actions" against him in response to his criticisms of Philip Ewell. ROA.32. He is not asking for a structural injunction or prophylactic relief; he is asking only to restrain university officials from taking actions that (in his view) violate his constitutional rights. *See Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."). In all events, it is not at all apparent that *Ex parte Young* forbids "affirmative injunctions"; there are plenty of cases in which courts issue elaborate structural injunctions directed at state officials, especially in prison litigation, and no one (to our knowledge) has suggested that this violates the *Ex parte Young* doctrine. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). All that's required under *Ex parte Young* is that the relief be "prospective," and injunctions are prospective even when they extend beyond mere restraints against unlawful behavior. *See, e.g.*, *Edelman v. Jordan*, 415

U.S. 651, 668 (1974); *Verizon Maryland*, 535 U.S. at 645 ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'").

Finally, the defendants are wrong to accuse Professor Jackson of seeking relief that would commandeer the Board Defendants on "discretionary duties." Appellants' Br. at 35 (citing *Richardson v. Texas Secretary of State*, 978 F.3d 220 (5th Cir. 2020)). Nowhere is Professor Jackson asking or even suggesting that the court usurp discretionary functions that have been vested in the Board defendants by statute. *See Richardson*, 978 F.3d at 243 (holding that *Ex parte Young* is inapplicable when "[s]ection 31.005 grants the Secretary discretion to take enforcement actions" and the plaintiff's lawsuit sought an injunction to compel enforcement action despite the statutory grant of discretion). And the defendants do not identify any statute that purports to vest "discretionary" tasks in the Board defendants, nor do they explain how Professor Jackson's lawsuit might countermand that statutorily conferred discretion. In all events, neither the Board defendants (nor anyone else) has "discretion" to violate Professor Jackson's First Amendment rights, so relief that seeks to restrain constitutional violations cannot implicate "discretionary duties."

## II. Professor Jackson Has Indisputably Alleged Article III Standing

A plaintiff needs only to *allege* and not prove Article III standing at the motion-to-dismiss stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The defendants do not dispute Jackson's standing to pursue his defamation claims, but they say that Professor Jackson lacks standing to seek prospective relief against the Board defendants. *See* Appellants' Br. at 37–45. The defendants' arguments are meritless. The university has effectively banned Professor Jackson from involvement in the Journal of Schenkerian Studies;[19] that undeniably establishes present and future "injury" that can be redressed with prospective relief directed at the Board of Regents.

### A. Professor Jackson Has Alleged Injury In Fact That Gives Him Standing To Sue The Board Defendants

Professor Jackson is seeking only prospective relief and not damages from the board defendants, so he must allege a continuing or future injury to establish Article III standing. *See Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Yet Professor Jackson has done exactly that by alleging that the university has banned him from any future involvement in the Journal of Schenkerian Studies. ROA.30. Professor Jackson has also alleged that the university will "eliminate resources previously provided to the Journal and Center for Schenkerian Studies." ROA.30; ROA.531-535 (affidavit of Timo-

---

19. ROA.892 ("Plaintiff can no longer publish scholarship in the Journal that he considers a trademark of his life's work, and if he took action to publish the work that is currently 'on ice,' he would face negative consequences imposed by UNT officials." (footnote omitted)).

thy Jackson at ¶¶ 6–16). Professor Jackson's exclusion from the Journal is an ongoing injury that is inflicting immediate harm—and it is certain to continue inflicting harm on Professor Jackson into the future. The same is true of the university's removal of support for the Journal and the center that Professor Jackson operates. These are present-day and future injuries that confer standing to seek prospective relief. *See Stringer*, 942 F.3d at 720 (requiring plaintiffs seeking prospective relief to allege "a continuing injury or threatened future injury.").

The defendants claim that Professor Jackson is alleging nothing more than past injury because their *decisions* to block Professor Jackson from involvement in the Journal were made in the past. *See* Appellants' Br. at 43 ("[H]is injuries were entirely retrospective."). But those past decisions continue to inflict present and future injury on Professor Jackson, as he remains unable to participate in the Journal both now and into the future. That the *decisions* to exclude Professor Jackson were made in the past does not mean that the *injuries* resulting from those decisions are exclusively in the past. The situation is no different from a President who decides to exclude travelers from designated foreign countries from entering the United States. The affected individuals still have standing to challenge the *implementation* of that past decision and seek prospective relief against its enforcement, even though they are challenging the legality of a past decision. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2415–16 (2018).

The defendants also deny that Professor Jackson has alleged a "certainly impending" injury. See Appellants' Br. at 42. That is transparently false. Paragraph 60 of the complaint states:

> On December 11, 2020 — more than a week before the deadline that the provost had imposed — Dr. Benjamin Brand (Professor Jackson's department chair) informed Professor Jackson that he would be removed from the Journal and that the university would eliminate resources previously provided to the Journal and Center for Schenkerian Studies.

ROA.30. Professor Jackson's "remov[al] from the Journal" and the university's intent to "eliminate resources previously provided to the Journal and Center for Schenkerian Studies" describe ongoing injuries — as well as "certainly impending" future injuries. Professor Jackson's banishment from the Journal will continue into the future unless it is enjoined by this Court, and the university will eliminate future resources for the Journal and Center for Schenkerian Studies absent judicial intervention. All of these allegations must be assumed true at this stage of the litigation, and they indisputably describe continuing and future injuries that confer standing to seek prospective relief. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true.").

## B. Professor Jackson Has Alleged That These Injuries Are "Fairly Traceable" To The Board Defendants

The defendants also deny that Professor Jackson's injuries are traceable to the Board defendants. *See* Appellants' Br. at 38–41. But at the motion-to-

dismiss stage, a plaintiff needs only to allege (and not prove) that his injuries are "fairly traceable" to a defendant's conduct. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be *fairly traceable* to the defendant's conduct." (emphasis added)). Professor Jackson's allegations easily meet this requirement.

Professor Jackson has alleged that his department chair, Dr. Benjamin Brand, informed him that he would be removed from the Journal and that the university would eliminate resources previously provided to the Journal and Center for Schenkerian Studies. ROA.60. This conduct is "fairly traceable" to the Board of Regents, which serves as the governing body for the University of North Texas System, and is responsible for the decisions and actions of university officials, as well as its failure to establish and enforce policies sufficient to protect Professor Jackson's academic freedom. *See* https://www.untsystem.edu/board-regents ("The Board of Regents [is] the governing body for the University of North Texas System").

The defendants complain that Professor Jackson did not specifically allege that the Board Defendants are involved with the Journal or the ad hoc panel's activities. See Appellants' Br. at 38. But no such allegations are necessary. Professor Jackson does not need to allege that the members of the Board of Regents directly caused his injuries; he needs only to allege that his injuries are "fairly traceable" to them. *See Lexmark*, 572 U.S. at 134 n.6. A university's affirmative-action policies, for example, are "fairly traceable" to

its Board of Regents, even when the regents are not directly involved in admissions decisions or in the policies established by the admissions office. *See, e.g.*, *Fisher v. University of Texas*, 758 F.3d 633, 637 (5th Cir. 2014). The traceability element is satisfied by the brute fact of the Board of Regents governing authority over the university; it does not require any additional showing of personal involvement on the part of the individual regents.

### C. Professor Jackson's Ongoing And Future Injuries Are Redressable

The Board of Regents' governing authority over the university is all that is needed to establish redressability. An injunction that directs the Board of Regents to halt the retaliatory actions taken against Professor Jackson will redress the alleged injuries, because the Board of Regents can countermand the decisions of Dr. Brand and other university officials. *See Larson v. Valente,* 456 U.S. 228, 244, n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself."). The defendants do not even try to argue that the Board of Regents is *powerless* to restore Professor Jackson to his role on the Journal, or that the Board of Regents is impotent to prevent university officials from taking future retaliatory actions against Professor Jackson.

### III. THE DISTRICT COURT HAS SUPPLEMENTAL JURISDICTION OVER PROFESSOR JACKSON'S STATE-LAW DEFAMATION CLAIMS

The district court can and should retain supplemental jurisdiction over the state-law defamation claims if this Court concludes that Professor Jack-

son has alleged the elements of Article III standing and pleaded a cause of action under *Ex parte Young*. The defendants do not argue to the contrary. If, however, the Court concludes that the district court lacks subject-matter jurisdiction over the First Amendment claims, then we agree with the defendants that there is no basis for continuing to assert supplemental jurisdiction over the defamation claims.

## CONCLUSION

The district court's order denying the defendants' motion to dismiss should be affirmed.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: September 16, 2022          *Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I certify that on September 16, 2022, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

Lanora C. Pettit
Principal Deputy Solicitor General
Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700 (phone)
(512) 474-2697 (fax)
lanora.pettit@oag.texas.gov

*Counsel for Defendants-Appellants*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff-Appellee*

# CERTIFICATE OF COMPLIANCE

### with type-volume limitation, typeface requirements, and type-style requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 6,406 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

/s/ Jonathan F. Mitchell

JONATHAN F. MITCHELL
*Counsel for Plaintiff-Appellee*

Dated: September 16, 2022

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on September 16, 2022, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov/

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Plaintiff-Appellee*